UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**LAURA J. HUGHART,**

        **Plaintiff,**

v.                                           **Case No:  6:11-cv-1848-Orl-GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

## MEMORANDUM OF DECISION

Laura J. Hughart (hereafter "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (hereafter "Commissioner") denying her application for benefits (hereafter "Application"), which alleged a disability onset date of December 31, 1999.  Doc. No. 1.  For the reasons set forth below, the final decision of the Commissioner is **REVERSED** and **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g).

I.   **MEDICAL AND OPINION EVIDENCE**

On April 4, 2006, Susan M. Arceneaux, M.D., Claimant's treating physician, saw Claimant for her complaints of lower back and left leg pain.  R. 322.  Dr. Arceneaux noted that Claimant has a history of low back pain, scoliosis and a previous MRI showed multi-level degenerative changes.  R. 322.  Dr. Arceneaux conducted a physical examination that revealed Claimant had a decreased range of motion in her lumbar spine with discomfort, but her cervical spine was within functional limits.  R. 322.  Dr. Arceneaux found Claimant had decreased sensation to light touch in her right anterior lateral thigh and her gait was normal.  R. 322.  Dr.

Arceneaux's "impression" was that Claimant has chronic lower back pain and left L5 radiculopathy with multi-level degenerative spine changes. R. 322. Dr. Arceneaux indicated she would administer a series of epidural corticosteroid injections because they had been beneficial to Claimant in the past. R. 322.

On April 20, 2006, an MRI of Claimant's lumbosacral spine was taken due to her complaints of low back pain. R. 333-34.[1] The MRI, as interpreted by Jeffrey J. Kormick, M.D., showed mild to moderate central canal, and lateral recess stenosis at L1-2. R. 333. At L2-3, there was mild central canal and moderate right lateral recess stenosis, as well as mild to moderate degenerative foraminal stenosis on the left. R. 333. At L3-4, there was moderate central canal stenosis and moderate degenerative neural foraminal stenosis on the right. R. 333. At the L4/transitional intravertebral disc, there was mild to moderate central canal and lateral recess stenosis, as well as moderate degenerative neural foraminal stenosis on the left. R. 334. Dr. Kormick also noted moderately severe levoscoliosis of the lumbar spine. R. 334. In light of these findings, Dr. Kormick indicated that Claimant's lumbar spine MRI was abnormal. R. 334.

On April 27, 2006, Dr. Arceneaux conducted an electrodiagnostic examination due to Claimant's complaints of shooting bilateral leg pain into her calves and feet. R. 335. Dr. Arceneaux indicated the electrodiagnostic examination was normal and showed "no evidence of a right or left lumbosacral radiculopathy or a lower limb distal neuropathy." R. 336. On May 4, 2006, Dr. Arceneaux documented the same physical examination findings as found on April 4, 2006. R. 316. Dr. Arceneaux indicated that the first epidural corticosteroid injection "helped and mobility is better." R. 316. On May 9, 2006, Dr. Arceneaux administered a second epidural corticosteroid injection. R. 315.

---

[1] MRI stands for magnetic resonance imaging.

On October 18, 2007, Theodore Weber, Psy.D., a non-examining consultant, completed a psychiatric review technique. R. 282-94. Dr. Weber diagnosed Claimant with depression based on her medical history, but noted that there was no mental status prior to her date last insured of June 30, 2006. R. 285, 294. Dr. Weber indicated there was insufficient evidence to determine the severity of her depression on Claimant's functional limitations prior to her date last insured. R. 292, 294.

On February 26, 2008, Loc Kim Le, M.D., completed a physical residual functional capacity assessment. R. 598-605. Dr. Le opined that Claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently. R. 599. Dr. Le opined that Claimant can stand, walk, or sit about six hours in an eight-hour workday. R. 599. Dr. Le indicated that Claimant's ability to push and/or pull is unlimited within the lift and carry restrictions noted above. R. 599. Dr. Le found that Claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes and scaffolds. R. 600. Dr. Le opined that Claimant has no manipulative, visual, communicative or environmental limitations. R. 601-02.

## II.     ADMINISTRATIVE PROCEEDINGS

On June 25, 2007, Claimant filed her Application, alleging she became disabled on December 31, 1999. R. 130. The Application was denied initially and on reconsideration. R. 56-57. Claimant requested a hearing before an administrative law judge (hereafter "ALJ"). R. 68. Claimant and a vocational expert testified at the hearing held on April 9, 2010. R. 24-54. Initially, the ALJ noted that a prior decision denying benefits was rendered on April 26, 2006, and that she would likely look at the period after that decision if it had not been appealed. R. 29.

Claimant testified that she has not worked since April 26, 2006, and her last job was as a paratransit driver, which she had to stop after getting hurt trying to lift one of the passengers. R.

32-33.  Prior to working as a driver, Claimant stated she did data entry for insurance and finance companies.  R. 33.  Claimant stated that she cannot work due to pain from her neck down, a degenerative disc problem, bad pain in her legs, arthritis in her fingers and migraine headaches when she looks at the computer screen.  R. 34.  Claimant indicated that she experiences daily pain, rated an eight and a half on a ten point scale, in her lower back that starts at her hips and radiates down her legs.  R. 35.  Claimant testified that she has taken tests and been prescribed opiates for her back pain.  R. 35-36.  Claimant stated that she has pain and soreness in her neck, shoulders and knees all the way to her toenails.  R. 37.  Claimant testified that she had a stroke in 2006, and occasionally blacked out due to vertigo until she was prescribed Antivert.  R. 38-39.  Claimant indicated that she went to the emergency room in 2009, because of swelling in her legs.  R. 39-40.  Claimant stated that her legs swell all the time and feel like they are going to explode, but she is able to reduce the swelling by elevating her legs.  R. 40.

Claimant testified that in a typical day she gets up at 4 a.m., sits in her chair, and an hour later takes Lyrica and Cymbalta.  R. 40.  Claimant testified that she normally waits for a while, eats a bowl of cereal and then lays down.  R. 40.  On a good day, Claimant washes the dishes with intermittent periods of rest, but otherwise does not perform any household chores.  R. 40-41.  Claimant usually sleeps in the afternoon.  R. 41.  Claimant is not a member of any clubs or organizations, does not visit friends or relatives, and seldomly shops.  R. 41.  Claimant testified that she can bathe and dress herself most of the time, and normally does not drive due to her black out spells.  R. 42.  Claimant stated that she can stand or sit for ten minutes at a time before needing to change positions.  R. 42-43.  Claimant indicated that she can walk less than a block before needing to take a break and can only lift and carry seven pounds.  R. 43.

The vocational expert classified Claimant's past work as transit driver and insurance clerk. R. 47-48. The ALJ asked whether a person of the same age, education and work experience as Claimant could perform her past relevant work with the following restrictions: can lift and carry twenty pounds occasionally and ten pounds frequently; can stand, walk and sit six hours in an eight-hour work day; needs to change position at will every sixty minutes; unlimited ability to push and pull within her lift and carry restrictions; can occasionally stoop, kneel, crouch, crawl, and climb stairs and ramps; can frequently balance, handle and finger; can reach in all directions; has no limitation with feeling; can understand, remember and carry out simple and routine tasks; can interact appropriately with co-workers, supervisors and the general public; can avoid normal work place hazards; and can adapt to routine changes in the workplace. R. 48-49. The vocational expert testified that such a person could work as an insurance clerk. R. 49.

The ALJ asked whether a person who could only lift and carry ten pounds occasionally and less than ten pounds frequently; could stand and walk two hours in an eight-hour workday; and otherwise had the same restrictions as the prior hypothetical could perform Claimant's past work. R. 50. The vocational expert testified that such a person could work as an insurance clerk. R. 50. The vocational expert testified that such a person could not work as an insurance clerk if the person required two to four additional breaks than customarily allowed. R. 50. The vocational expert stated that there would be no jobs the person could perform if absent or unable to remain on task twenty percent of the time. R. 51, 53.

On September 3, 2010, the ALJ issued her decision. R. 10-16. The ALJ noted that Claimant filed a prior application that was denied on April 26, 2006, presumed the prior application was a final decision of the Commissioner because Claimant presented no information to the contrary and determined that the "period under consideration begins the day after the date

of the prior ALJ decision and continues through the date last insured," June 30, 2006.  R. 10, 12. The ALJ found that Claimant has not engaged in substantial gainful activity from April 26, 2006, through June 30, 2006.  R. 12.  The ALJ determined that Claimant suffers from the severe impairment of "degenerative disc disease in the lumbar spine (based only on medical evidence between the prior ALJ decision and the date last insured[)]."  R. 12.  In making this determination, the ALJ stated she reviewed the evidence after Claimant's date last insured, June 30, 2006, but it did not support a finding of disability prior to the date last insured.  R. 13.

The ALJ found that Claimant's degenerative disc disease in the lumbar spine does not meet or medically equal listing 1.04, as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, because the "medical evidence does not indicate nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis prior to the date last insured."  R. 13.  The ALJ determined that Claimant has the residual functional capacity (hereafter "RFC") to perform sedentary work.  R. 13.  In reaching this RFC determination the ALJ stated:

> As indicated previously there is a prior ALJ decision dated April 26, 2007 [sic].  Since there are no grounds to re-open that decision, I will evaluate in detail only the medical evidence since the final decision.  In addition, this case has a remote date last insured ("DLI") of June 30, 2006 just two months after the prior decision. I have nonetheless reviewed and the [sic] considered the post-DLI evidence to the extent that it may relate back to the critical period between the ALJ decision and the DLI.  As explained above in paragraph 2, I do not find that the claimant's established post-DLI impairments relate back to the critical period.  Moreover, while limited, I find that there is evidence during the critical period sufficient to make a determination in this case.
>
> The claimant generally alleges that she cannot return to her past relevant work due to her low back pain.  The evidence, however, does not support his allegation.  The evidence is limited, but the two records in the file during the critical period are sufficient to support the residual functional capacity set forth above.

The claimant's first visit of record is dated May 4, 2006. On this date, the claimant saw Susan Arceneaux, M.D. and complained of lower back and left leg pain. The claimant reported that she had a long history of lower back pain and that her past MRI showed multilevel degenerative changes. Upon physical examination, while Dr. Arceneaux found some lumber [sic] decreased range of motion with some discomfort, she also found negative straight leg raise, full 5/5 muscle strength in all extremities, and normal gait. The claimant was diagnosed with degenerative disc disease in the lumbar spine. On that date Dr. Arceneaux noted that the claimant's first epidural corticosteroid injection helped with the claimant's pain and that the claimant's mobility subsequently improved. Dr. Arceneaux then scheduled the claimant for a second injection. The record then shows that on May 9, 2006, the claimant received her second epidural corticosteroid injection. This is the last record within the critical period.

Of note the record does not show that the claimant complains about her back pain again until October 20, 2006, five months after her last visit with Dr. Arceneaux, and four months after the DLI. On that date, the claimant went to the emergency and complained of lower back pain. Significantly, the claimant was noted to have not taken her pain medication that day. On examination, the claimant was found to have just some mild tenderness in the lower back, generally normal back inspection, normal extremity exam with full range of motion and no tenderness, and no motor or sensory deficits. The claimant was assessed with chronic low back pain.

Therefore, based on the evidence during the critical period, the claimant had normal gait and full muscle strength, and was noted to have less pain and more mobility after epidural corticosteroid injections. Her first record after the DLI, four months later, showed no significant worsening and only mild lumbar back tenderness without pain medication. Hence, the evidence suggests that the claimant's lower back pain responded well to conservative treatment and even without pain medication, her pain was assessed as mild. Nevertheless, the claimant alleges that she had significant low back pain that radiated down to her lower extremities preventing her from standing, walking or sitting for prolonged periods. While the evidence does not support these allegations, I have nonetheless accommodated these complaints by limiting the claimant to sedentary work with postural limitations.

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably

> be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not persuasive to the extent they are inconsistent with the above residual functional capacity assessment.
>
> As for the opinion evidence, the State agency medical consultants' physical assessments are given limited weight because they did not consider the subjective complaints of the claimant. The State agency psychological consultant's mental assessment is given great weight as the opinion is supported by the evidence in the file up to the DLI. The third party function report by Steven Hughart is given no weight as it does not provide any assessment or opinion of functioning prior to the DLI.
>
> In sum, the above residual functional capacity assessment is supported by the evidence of record, medical findings. I find the evidence contained in the record does not support the claimant's allegations of symptoms so severe as to preclude performance of any work up to or including the date last insured. Therefore, I find that the claimant's subjective complaints and alleged limitations are not persuasive and the claimant retains the ability, despite her impairments, to perform her past relevant work within the limitations set forth above. This capacity is consistent with and supported by the observations of treating sources in the medical records.

R. 14-15 (internal citations omitted). Thus, the ALJ reviewed the medical evidence and found it did not support Claimant's allegations of disabling low back pain, stated the weight given to medical and non-medical sources, and concluded that Claimant can perform her past relevant work. Based on these findings, the ALJ found Claimant is not disabled. R. 16.

### III.   LEGAL STANDARDS

#### A.   THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274, 1278

(11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The

District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

### C. REMEDIES

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it

is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984).  A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice. *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098.  Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829-30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[2]

## IV.   ANALYSIS

Claimant raises three issues on appeal.  First, Claimant argues that the ALJ's RFC determination is flawed because she failed to consider Dr. Kormick's MRI and inaccurately stated that Claimant does not suffer from spinal stenosis. Doc. No. 21 at 8-9.  Second, Claimant argues that the ALJ did not properly evaluate her credibility. Doc. No. 21 at 10-12.  Third, Claimant argues that the ALJ improperly applied the pain standard. Doc. No. 21 at 12-14.

### A.  Dr. Kormick's MRI and the ALJ's RFC

At step three, the ALJ found that Claimant's degenerative disc disease of the lumbar spine did not meet listing 1.04 because there was no medical evidence of nerve root

---

[2] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

compression, spinal arachnoiditis or lumbar spinal stenosis. R. 13. Claimant contends the ALJ's RFC finding is not supported by substantial evidence because Dr. Kormick stated that Claimant suffers from "multi-level acquired central canal, lateral recess, and neural foraminal stenosis . . . ." R. 334. Claimant asserts that because the ALJ mistakenly stated she does not suffer from spinal stenosis, the ALJ "did not properly analyze the condition and limitations of the claimant." Doc. No. 21 at 10. Claimant requests the Court reverse the ALJ's decision and remand for an award of benefits. Doc. No. 21 at 14. Alternatively, Claimant requests the case be remanded "for further consideration and appropriate application of the law." Doc. No. 21 at 14.

The Commissioner argues that the "ALJ was not required to review evidence from the prior adjudicated period," including Dr. Kormick's MRI. Doc. No. 22 at 5. The Commissioner further argues that because Claimant does not challenge the ALJ's finding at step three, she has waived her right to challenge the ALJ's finding that there was no evidence of lumbar spinal stenosis. Doc. No. 22 at 5-6. Finally, the Commissioner argues that Claimant "points to no evidence other than [Dr. Kormick's] MRI to show that [Claimant] suffered from spinal stenosis that cause any limitations precluding [her] from performing sedentary work." Doc. No. 22 at 6.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 C.F.R. § 404.1520(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. RFC is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* If a claimant can still do the kind of work she has done in the past, then the Regulations require that she be

found not disabled.  The burden is on the Plaintiff to show that she can no longer perform her past relevant work.  *Jackson v. Bowen*, 801 F.2d 1291, 1292 (11th Cir. 1986).  The responsibility for determining a claimant's RFC rests solely with the ALJ.  20 C.F.R. § 404.1513(b)(6) (the lack of a medical source statement stating what the claimant can still do despite her impairments will not make a medical report incomplete); 20 C.F.R. § 404.1527(e)(2).[3]  In evaluating a claimant's RFC, the ALJ is obliged to consider all of the claimant's impairments, including subjective symptoms such as pain.

In this case, the ALJ only considered the medical evidence dated after April 26, 2006, the date of the prior ALJ's decision.  R. 14.  Thus, the ALJ did not consider Dr. Kormick's MRI because it was dated April 20, 2006, notwithstanding the fact that it was part of the medical record submitted for her consideration.  R. 333.  There is no suggestion, by the Commissioner, that Dr. Kormick's MRI does not relate to the relevant period at issue for determining disability.  The Commissioner also does not claim that Dr. Kormick's MRI is not relevant to determining whether Claimant is disabled.  Instead, the Commissioner baldly asserts that the ALJ was not required to consider Dr. Kormick's MRI, but cites no authority in support.[4]

The Commissioner's assertion that the ALJ was not required to consider Dr. Kormick's MRI starkly contrasts with the requirement that the ALJ consider "all relevant evidence of a claimant's remaining ability to do work despite his impairments," when determining a claimant's RFC.  *See* 20 C.F.R. § 404.1545(a); *Lewis*, 125 F.3d at 1440.  The ALJ's failure to consider Dr. Kormick's MRI led her to incorrectly state that there was no medical evidence indicating that

---

[3] "We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s).  Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments . . ., your [RFC] . . ., or the application of vocational factors, the final responsibility for deciding these issues is reserved for the Commissioner." 20 C.F.R. § 404.1527(e)(2).

[4] In light of the fact that Dr. Kormick's MRI was done a mere six days before the ALJ's April 26, 2006, decision, the findings contained therein undoubtedly appear relevant.

Claimant suffered from lumbar spinal stenosis. R. 13. The MRI at issue is central to assessing the severity of Claimant's degenerative disc disease. The importance of the MRI is highlighted by the ALJ's statement that the medical "evidence is limited . . . ." R. 14.[5] The ALJ's failure to consider Dr. Kormick's MRI led to an incorrect statement about the medical evidence of record and the nature of Claimant's condition. In light of this error, the Court is unable to determine whether the ALJ's decision is supported by substantial evidence.[6]

## V.     REMEDIES

The Claimant requests the Court reverse for an award of benefits. Doc. No. 21 at 14. The Court may only reverse for an award of benefits where it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis*, 985 F.2d at 534. In making such a determination, the Court is mindful that it "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). In this case, the cumulative effect of the evidence does not establish disability without any doubt. Accordingly, remand to the Commissioner for further proceedings is appropriate.

## VI.    CONCLUSION

For the reasons stated above, it is **ORDERED** that:

1.  The final decision of the Commissioner is **REVERSED** and **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g); and

2.  The Clerk is directed to enter judgment for Claimant and close the case.

---

[5] The Court notes that the ALJ indicated that there were no grounds to re-open the prior proceedings (*see* R. 14) and that aspect of her decision has not been challenged. Nevertheless, the Court believes that the ALJ was obligated to consider the MRI to the extent it was relevant to Claimant's condition.

[6] In light of this conclusion, the Court does not address Claimant's other arguments.

**DONE and ORDERED** in Orlando, Florida on March 20, 2013.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Shea A. Fugate
PO Box 940989
Maitland, FL 32794

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
John C. Stoner, Branch Chief
Dana L. Myers, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Angela Miranda
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224